UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Robert Derek Lorch Jr.
_____

Write the full name of each plaintiff.

-against-

-See Defendant's Information-
_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

26 CV 1634

No._____

(To be filled out by Clerk's Office)

**COMPLAINT**

(Prisoner)

Do you want a jury trial?
☑ Yes    ☐ No



RECEIVED

FEB 26 20[ ]

PRO SE OFFICE

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/6/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☑ Violation of my federal constitutional rights

☐ Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

Robert _____ D. _____ Lusch _____ Jr. _____
First Name        Middle Initial        Last Name

N/a _____
State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

N/a _____
Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

N/a _____
Current Place of Detention

274 West 40th Street _____
Institutional Address

New York _____        NY _____        10018 _____
County, City                State                Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☐  Convicted and sentenced prisoner

☑ Other:        not detained _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:    "The city of New york"

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State                Zip Code

Defendant 2:    Michael          Furrs

First Name          Last Name                    Shield #

Police Officer

Current Job Title (or other identifying information)

Current Work Address

New york                    NY

County, City                    State                Zip Code

Defendant 3:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State                Zip Code

Defendant 4:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State                Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence:    ·Included In attached

Date(s) of occurrence:    -continuing violation

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

-see attached-

# FACTUAL ALLEGATIONS

On May 19, 2015, Plaintiff Robert Lurch was arrested in New York County and charged with Criminal Possession of a Weapon in the Second Degree. At the time of arrest, a warrant existed; however, the warrant was unrelated to the 2014 shooting repeatedly referenced by Police Officer Michael Furrs in subsequent proceedings. Officer Furrs was not the arresting officer but later became a central witness in the prosecution of Plaintiff.

Following Plaintiff's arrest, Officer Furrs provided sworn testimony before the grand jury and later at a suppression hearing. At the grand jury, Officer Furrs testified that Plaintiff was seized as he approached a subway turnstile. At the suppression hearing, Officer Furrs materially altered his testimony and stated instead that Plaintiff was seized while jumping over the turnstile. These accounts are mutually exclusive. One describes lawful fare evasion observation; the other suggests an entirely different factual predicate for seizure. Both accounts cannot simultaneously be true. This material inconsistency was not trivial but went directly to whether officers had lawful grounds to initiate police contact.

Officer Furrs further testified that Plaintiff was wanted for a 2014 shooting and that an active I-Card existed on the day of arrest. Documentary records demonstrate that the alleged I-Card had been created years earlier and canceled on February 25, 2015 for lack of evidence, and therefore was not active on May 19, 2015. Despite this, Officer Furrs testified that he called the 10th Precinct Detective Squad to verify that the I-Card was active. This assertion was materially false. By representing that Plaintiff was a wanted shooting suspect with an active investigative alert, Officer Furrs portrayed Plaintiff as an armed and dangerous fugitive, thereby strengthening the prosecution's case and influencing judicial determinations.

Officer Furrs also testified that he recognized Plaintiff from precinct bulletins prior to the arrest. In earlier sworn statements, however, Officer Furrs indicated that he had not previously identified Plaintiff. This shift in testimony occurred after the defense challenged the legality of the stop. The alteration of testimony conveniently supplied additional justification for the encounter.

In addition, Officer Furrs testified that he observed a firearm in Plaintiff's waistband while positioned behind and above Plaintiff on subway steps, with Plaintiff's back facing him. Recovery reports later indicated that the firearm was allegedly located at the center of Plaintiff's waistband. Officer Furrs did not testify that Plaintiff turned or exposed his torso. The description of observing a firearm in the center of a waistband from behind and above—without any movement by Plaintiff—is physically implausible. This alleged observation was the linchpin of the prosecution's case and was used to defeat Plaintiff's suppression motion.

These fabrications were incorporated into official reports and conveyed to prosecutors. The prosecution relied upon Officer Furrs' representations in opposing suppression and continuing the criminal case. Despite documentary evidence contradicting the claimed I-Card status, the

prosecutor did not correct the record, disclose the cancellation documentation, or investigate the inconsistency. The prosecutor continued to advance the theory that Plaintiff was a wanted shooting suspect and that officers lawfully observed a weapon.

The prosecution had an independent constitutional obligation not to present or rely upon evidence known to be false. See Napue v. Illinois (due process violated when State knowingly uses false testimony). When the suppression hearing revealed contradictions between grand jury testimony and hearing testimony, the prosecutor did not move to correct the false record. Instead, the prosecution continued to rely on the altered version of events to sustain the admissibility of the firearm.

Moreover, the prosecution failed to disclose exculpatory material relating to the cancellation of the I-Card prior to trial, despite its materiality to probable cause and credibility determinations. The suppression of such impeachment and exculpatory evidence constitutes a violation under Brady v. Maryland and its progeny. The existence and cancellation status of the I-Card was directly relevant to the truthfulness of Officer Furrs' testimony and the lawfulness of the seizure.

The prosecutor's conduct, taken together with Officer Furrs' fabrication, resulted in the continuation of criminal proceedings against Plaintiff until August 2025. The false portrayal of Plaintiff as a wanted shooting suspect and the implausible firearm observation were repeatedly relied upon to defeat suppression challenges and sustain prosecution.

At all relevant times, Officer Furrs acted under color of state law as an employee of the New York City Police Department. The prosecutor acted under color of state law as a representative of the State. While the prosecutor may assert absolute immunity for certain advocacy functions, the constitutional violations described herein include investigative and evidentiary misconduct occurring outside the core prosecutorial function, including the failure to correct known false testimony and the suppression of exculpatory material.

As a direct and proximate result of these constitutional violations, Plaintiff suffered deprivation of liberty, prolonged prosecution, emotional distress, reputational harm, and financial injury. The criminal proceedings did not terminate until August 2025, at which point Plaintiff's fabrication-based claims accrued pursuant to McDonough v. Smith.

The actions of Officer Furrs in fabricating evidence violated Plaintiff's clearly established right to due process under Ricciuti v. N.Y.C. Transit Authority. The knowing use or failure to correct false testimony by the prosecution violated clearly established Supreme Court precedent under Napue v. Illinois. The suppression of material exculpatory evidence violated clearly established obligations under Brady v. Maryland.

These were not mere mistakes or negligence. The inconsistencies were material, outcome-determinative, and directly related to the establishment of probable cause and the admissibility of the firearm. The false statements and omissions were central to sustaining Plaintiff's prosecution for nearly a decade.

# CAUSES OF ACTION:

## COUNT I

## Denial of Right to a Fair Trial – Fabrication of Evidence

(Fourteenth Amendment)

This claim is timely. A fabrication-of-evidence claim accrues when the criminal proceeding terminates in the defendant's favor. McDonough v. Smith. Because the criminal matter did not conclude until August 2025, this action—filed within three years—is within New York's limitations period applicable to §1983 claims. See Owens v. Okure.

It is clearly established in the Second Circuit that a police officer violates due process when he fabricates evidence likely to influence a jury and forwards it to prosecutors. Ricciuti v. N.Y.C. Transit Authority. This principle does not depend on the absence of probable cause. Even where arguable probable cause exists, deliberate fabrication independently violates the Constitution. Garnett v. Undercover Officer C0039.

Officer Furrs fabricated and materially altered critical investigative facts:

1. He provided mutually exclusive sworn accounts of the seizure (approaching a turnstile versus jumping one).

2. He asserted that an I-Card related to a 2014 shooting was active, despite documentary evidence showing cancellation months earlier.

3. He claimed to have verified that I-Card with detectives.

4. He claimed prior recognition of Plaintiff from precinct bulletins.

5.  He described an implausible firearm observation inconsistent with geometry and recovery reports.

These were not minor inconsistencies; they were substantive factual representations central to the prosecution's theory. The firearm observation directly supported the weapon charge. The alleged I-Card portrayed Plaintiff as a wanted violent suspect, dramatically prejudicing judicial determinations.

Under Coggins v. Buonora, witness immunity under Rehberg v. Paulk does not bar claims based on pre-testimonial fabrication. Plaintiff challenges investigative falsification preceding and independent of grand jury testimony. Courts routinely deny motions to dismiss where officers allegedly falsified reports or investigative accounts later used in prosecution. See Frost v. New York City Police Department.

The Second Circuit has also held that fabrication influencing suppression determinations can constitute a deprivation of liberty. A defendant need only show that fabricated evidence was likely to influence a jury or prosecutor and caused liberty deprivation. Garnett v. Undercover Officer C0039.

Qualified immunity is unavailable. By 2015, it was clearly established that fabricating material evidence violates due process. Ricciuti v. N.Y.C. Transit Authority. No reasonable officer could believe that inventing an active I-Card or altering sworn testimony was lawful.

Because Plaintiff plausibly alleges intentional fabrication that prolonged prosecution until 2025, this claim survives Rule 12(b)(6).

# COUNT II

# Malicious Prosecution

(Fourth and Fourteenth Amendments)

This claim is timely because it accrues upon favorable termination of criminal proceedings. Heck v. Humphrey; McDonough v. Smith.

To state malicious prosecution under §1983, Plaintiff must plausibly allege:
(1) initiation or continuation of criminal proceedings;

(2) lack of probable cause;

(3) malice;

(4) favorable termination.

Manganiello v. City of New York.

Officer Furrs initiated and continued prosecution by forwarding fabricated investigative material. An officer need not sign the complaint to be liable; influencing prosecutorial decisions suffices. Rohman v. New York City Transit Authority.

Although a warrant existed at arrest, probable cause is vitiated where it rests on knowingly false statements. Golino v. City of New Haven. Courts apply a "corrected affidavit" doctrine: excise false statements and assess whether probable cause remains.

Here, if the false I-Card, false recognition, and implausible firearm observation are removed, probable cause for the prosecuted weapon charge is substantially undermined. At the pleading stage, Plaintiff need only plausibly allege that probable cause depended materially on fabricated facts. See Boyd v. City of New York.

Malice may be inferred from fabrication. Manganiello v. City of New York.

The Supreme Court clarified favorable termination standards in Thompson v. Clark, holding that a plaintiff need only show that the prosecution ended without a conviction. Assuming termination in August 2025 satisfies that standard, accrual occurred then.

Because Plaintiff alleges intentional falsification material to prosecution, this claim withstands dismissal and qualified immunity defenses.

# COUNT III

## Judicial Deception – Fourth and Fourteenth Amendment Violations

Officer Michael Furrs violated Plaintiff's clearly established Fourth and Fourteenth Amendment rights by deliberately or recklessly providing materially false statements and omissions to the court in order to secure and sustain judicial findings of probable cause and the denial of suppression. The Constitution prohibits an officer from misleading a judicial officer through false statements or material omissions. The Supreme Court held in Franks v. Delaware that a warrant violates the Fourth Amendment when it is based on statements that are deliberately false or made with reckless disregard for the truth, if those statements are necessary to the finding of

probable cause. The Second Circuit has repeatedly applied Franks principles in civil §1983 actions involving judicial deception. See Golino v. City of New Haven (officer liable where knowingly false statements were material to probable cause determination); Velardi v. Walsh (civil liability attaches where false statements or omissions are necessary to probable cause).

Judicial deception is not limited to the procurement of arrest warrants. It extends to any situation in which an officer knowingly misleads a court in order to secure a judicial determination affecting liberty, including suppression rulings. The Second Circuit has held that an officer violates clearly established law when he intentionally supplies false information that influences a prosecutor or judicial officer. Ricciuti v. N.Y.C. Transit Authority. The constitutional harm occurs when fabricated or misleading information becomes instrumental in sustaining prosecution or denying suppression, thereby prolonging deprivation of liberty.

Here, Officer Furrs provided materially inconsistent sworn testimony regarding the factual predicate for the seizure—first asserting that Plaintiff was approaching a turnstile, later asserting that Plaintiff was jumping over it. These statements are mutually exclusive and directly impact whether officers had lawful grounds for initiating police contact. This is not a minor discrepancy but a fundamental alteration of the factual basis for seizure.

Officer Furrs further represented that an active I-Card existed linking Plaintiff to a 2014 shooting and that he verified the I-Card with the detective squad. Documentary evidence demonstrates that the I-Card had been canceled months prior to the arrest. The assertion that Plaintiff was a wanted shooting suspect materially elevated the perceived threat level and directly influenced the court's assessment of reasonable suspicion and probable cause. Under the "corrected affidavit" doctrine applied in Golino v. City of New Haven, courts must excise false statements and determine whether probable cause remains. If the false I-Card assertion and false verification are removed, the justification for heightened suspicion collapses.

Additionally, Officer Furrs testified that he observed a firearm in Plaintiff's waistband while positioned behind and above Plaintiff with Plaintiff's back facing him. The firearm was later reported as recovered from the center of the waistband. Officer Furrs did not testify that Plaintiff turned or exposed his torso. This description is internally inconsistent and physically implausible. Courts recognize that deliberate falsification of physical observations central to probable cause constitutes judicial deception. See Soares v. Connecticut (officer liable where false statements were knowingly included in warrant application).

The existence of a separate warrant does not immunize judicial deception. Even where some basis for detention exists, officers may not fabricate additional facts to justify a search, seizure, or evidentiary ruling. The Second Circuit has emphasized that probable cause cannot be manufactured through falsehood. Manganiello v. City of New York. Where false information is necessary to sustain a charge or defeat suppression, the constitutional violation is complete.

Moreover, judicial deception defeats qualified immunity. By 2015, it was clearly established that intentionally or recklessly misleading a court violates the Fourth Amendment. Golino v. City of

New Haven. No reasonable officer could believe that falsely asserting the existence of an active investigative alert, fabricating prior identification, or materially altering sworn testimony was lawful.

The constitutional injury here is not merely the arrest in 2015. Rather, it is the corruption of the judicial process through deliberate misrepresentation. The suppression court relied upon Officer Furrs' testimony to deny exclusion of the firearm. When an officer's false testimony is instrumental in securing a judicial ruling that prolongs prosecution, that officer has engaged in judicial deception actionable under §1983. See McDonough v. Smith (fabrication claims accrue upon favorable termination because the injury lies in the misuse of the judicial process).

In evaluating judicial deception, courts ask whether, after correcting the record by excising false statements and including omitted facts, probable cause remains. Velardi v. Walsh. Here, removing the false I-Card, the false verification, the contradictory seizure narrative, and the implausible firearm observation would eliminate the factual foundation upon which suppression was denied and prosecution continued.

Because Officer Furrs knowingly or recklessly misled the court with material falsehoods that were necessary to sustain prosecution, Plaintiff has plausibly alleged judicial deception in violation of the Fourth and Fourteenth Amendments. These allegations, accepted as true at the pleading stage, are sufficient to overcome a motion to dismiss and defeat qualified immunity.

## COUNT IV

# Municipal Liability – Monell Claim

(Against the City of New York)

Plaintiff repeats and realleges all prior paragraphs.

This claim is brought pursuant to 42 U.S.C. § 1983 against Defendant City of New York for constitutional violations caused by its policies, customs, practices, and deliberate indifference to the rights of persons with whom its police officers come into contact.

Under Monell v. Department of Social Services, a municipality is liable when execution of its policy or custom inflicts constitutional injury. Liability attaches where a municipality maintains

(1) a formal policy; (2) a widespread and persistent custom; (3) a failure to train amounting to deliberate indifference; or (4) a failure to supervise or discipline that causes constitutional harm. See Walker v. City of New York.

## A. NYPD Patrol Guide Mandates Truthful Reporting

The New York City Police Department Patrol Guide contains explicit directives governing officer honesty, reporting accuracy, and courtroom testimony.

### 1. Patrol Guide § 203-08 – "False Statements"

This section prohibits members of the service from knowingly making false statements in any official document, report, or proceeding. It mandates disciplinary action for falsification and underscores that integrity in reporting is a foundational duty.

Officer Furrs' alleged fabrication of:

- The existence and verification of an active I-Card;

- The circumstances of seizure;

- His prior identification of Plaintiff;

- His observation of a firearm under implausible circumstances;

would constitute direct violations of Patrol Guide § 203-08.

The City's failure to meaningfully enforce § 203-08—despite widespread litigation and judicial findings concerning officer credibility—demonstrates deliberate indifference to constitutional obligations recognized in Ricciuti v. N.Y.C. Transit Authority.

### 2. Patrol Guide § 212-11 – "Preparation of Complaint Follow-Up"

This provision requires officers to ensure accuracy and completeness in investigative documentation and to verify factual assertions before submission to prosecutors.

The alleged false assertion that an I-Card was active—and that it was verified with detectives— reflects either a failure of training or supervision under this provision. The constitutional requirement that probable cause be based on reasonably trustworthy information was clearly established in Beck v. Ohio.

Failure to ensure officers are trained to verify database alerts prior to courtroom testimony creates a predictable risk of constitutional violations under City of Canton v. Harris.

### 3. Patrol Guide § 208-03 – "Court Appearances"

This section requires officers to provide truthful, consistent, and complete testimony in judicial proceedings.

When an officer gives materially inconsistent sworn testimony—such as claiming a suspect was first observed approaching a turnstile and later testifying the suspect was jumping it—this reflects either perjury or systemic tolerance of inconsistent accounts.

The City's failure to:

- Monitor suppression hearing transcripts;

- Track judicial credibility findings;

- Discipline officers for materially inconsistent testimony;

demonstrates deliberate indifference under Amnesty America v. Town of West Hartford.

## B. Notice to the City of Recurring Fabrication Risks

The City has long been on notice of constitutional deficiencies within the NYPD's supervision and accountability structures. In Floyd v. City of New York, the court found systemic failures in supervision, monitoring, and discipline concerning unconstitutional stops and reporting practices.

Although Floyd addressed stop-and-frisk, its findings placed policymakers on notice that officers were engaging in constitutionally defective documentation practices and that supervisory review mechanisms were insufficient.

Under Walker v. City of New York, deliberate indifference is established where policymakers know to a moral certainty that officers will confront recurring constitutional situations—such as weapon arrests and suppression hearings—yet fail to provide adequate training or discipline.

Weapon-possession prosecutions are among the most common criminal cases in New York courts. It is therefore a moral certainty that officers will regularly testify regarding:

- Observations of firearms;

- Verification of warrants and I-Cards;

- Circumstances of seizure.

Failure to ensure rigorous training and supervision in these recurring contexts constitutes deliberate indifference.

## C. Failure to Discipline and Ratification

Upon information and belief, the City:

- Rarely disciplines officers for inconsistent sworn testimony absent criminal prosecution;

- Does not maintain effective systems for tracking credibility determinations made by judges;

- Permits officers with known credibility issues to continue testifying without remedial action.

The Second Circuit recognizes that a municipality's failure to discipline officers despite notice of misconduct may constitute ratification and deliberate indifference. See Cash v. County of Erie.

Where internal policies like Patrol Guide § 203-08 exist on paper but are not enforced in practice, the existence of the written policy does not insulate the City from liability. Instead, non-enforcement evidences a custom of tolerating misconduct.

## D. Causation – Moving Force

To establish Monell liability, Plaintiff must show that the municipal custom or failure to train was a "moving force" behind the constitutional violation. Monell v. Department of Social Services.

Here:

- The failure to enforce § 203-08 allowed fabrication without fear of discipline;

- The failure to train on database verification under § 212-11 enabled false I-Card assertions;

- The failure to monitor courtroom testimony under § 208-03 permitted inconsistent sworn accounts.

These supervisory failures created the environment in which Officer Furrs' fabrication occurred and directly caused Plaintiff's prolonged prosecution.

## E. Sufficiency at Pleading Stage

At the Rule 12(b)(6) stage, Plaintiff need only plausibly allege a municipal custom or failure to train that caused constitutional injury. Amnesty America v. Town of West Hartford.

Because Plaintiff identifies:

- Specific Patrol Guide provisions;

- Systemic supervisory failures;

- Known prior judicial findings placing the City on notice;

- Direct causal linkage between those failures and the fabrication alleged;

the Monell claim plausibly alleges deliberate indifference and survives dismissal.

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

- Pyschological Impact of Officer Misconduct / Judicial deception
- Social and Personal Life Impact
- Financial/Economic Harm
- Reputational Harm
- Loss of Liberty

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

Page 5

## VII.    PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.


Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | | |
|---|---|---|
| 2/21/2026 | | |
| Dated | | Plaintiff's Signature |
| Robert | D. | Lurch    Jr. |
| First Name | Middle Initial | Last Name |
| 274 west 10th St. | | |
| Prison Address | | 10018 |
| New York | NY | |
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6

Robert D. Lorch Jr.

274 West 49th St.

New York, NY

10018

RECEIVED
FEB 26 2020
PRO SE OFFICE

SHIP
TO:
NEW YORK NY 10007

(420) 10007

Pro SE Office

S.D.N.Y / U.S.D.C

500 Pearl Street

New York, NY 10007

USM4P
SDNY

HANDLE WITH CARE